## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ANTHONY GALLEGOS, OLEN C. PRIDDY,
SHEILA CAVITT-OLGUIN, TYLER KEMP,
DEBORAH LEYBA, ROSE ANNA MARQUEZ,
DANIEL JOSLIN, GREGORY LUNGSTRUM,
JUANITA MAESTAS, CANDACE SEAVERNS
on behalf of THE SEAVERNS FAMILY
LIVING TRUST, RICHARD OGOREK, and
JUANITA HERRERA-ROMERO,

        Plaintiffs/Petitioners,

    v.                                         No. 1:24-cv-00170-JB-JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY, and DOES 1-20, INCLUSIVE,

        Defendants/Respondents.

## FEDERAL RESPONDENT'S MOTION *IN LIMINE* TO EXCLUDE
## EXTRA-RECORD TESTIMONY AND EVIDENCE

On March 31, 2025, the Court issued a Memorandum Opinion and Order ("MOO") in eleven cases determining that over 200 petitioners' efforts to obtain judicial review of Federal Emergency Management Agency's ("FEMA's") final decisions on their claims for compensation under Section 104(i) of the Hermit's Peak/Calf Canyon Fire Assistance Act, Pub. L. No. 117–180 ("HPCC Act") did not require them to complete FEMA's administrative appeals process.[1] Doc. No. 40. Following its denial of FEMA's motion to dismiss, the Court ordered a hearing in the

---

[1] The MOO was filed in the following cases which only sought judicial review of claims under Section 104(i) of the HPCC Act: *Gallegos v. FEMA*, 24-cv-170-JB-JFR; *Fidel-Alirez, Jr. v. FEMA*, 24-cv-426-JB-JFR; *Marquez v. FEMA*, 24-cv-580-JB-JFR; *Passamonti v. FEMA*, 24-cv-681-JB-JFR; *Baca v. FEMA*, 24-cv-779-JB-JFR; *Gurule v. FEMA*, 24-cv-875-JB-JFR. The MOO was filed in the following cases which sought both judicial review of claims under Section 104(i) of the HPCC Act and also challenged aspects of FEMA's appeals process under the Administrative Procedures Act: *Arrelin v. FEMA*, 24-cv-979-JB-JFR; *J. Benavidez v. FEMA*, 24-cv-1137-JB-JFR; *Lane v. FEMA*, 24-cv-1221-JB-JFR; *Leonard v. FEMA*, 24-cv-1311-JB-JFR; and *A. Benavidez v. FEMA*, 25-cv-109-JB-JFR.

above-captioned case, currently set for May 5, 2025 (the "Hearing"), at which it would conduct a judicial review of the twelve petitioners' HPCC claims. Doc. 44. The Court also directed both Petitioners and Respondent to submit records for the Court's review. Doc. 45. Under HPCC Act § 104(i), the Court's judicial review shall be of the final decision made by FEMA on Petitioners' claims, based on the record made before FEMA's administrator, and reviewed for substantial evidence upon the record considered as a whole. HPCC Act §§ 104(i)(1)–(3).

This governing provision of the HPCC Act, § 104(i), requires a limited scope of the Court's review and its upcoming Hearing. Petitioners' apparent intention to introduce evidence never presented to FEMA before the challenged final decisions, including live witness testimony, cannot be considered as part of the Court's judicial review. Therefore, FEMA respectfully requests the Court to (1) limit judicial review to the Administrative Record developed prior to the date of the judicially reviewable "final decisions" challenged in the Complaint and (2) exclude Petitioners' supplemental documents and planned live testimony from the Hearing and the Court's judicial review. Subject to Local Civil Rule 7.1, FEMA sought Petitioners' position on this motion and it is opposed.

## I.    Factual and Procedural Background

### A.    Petitioners engaged in FEMA's claims process to seek compensation for economic and non-economic damages under the HPCC Act.

Petitioners are eleven individuals and one living trust that claim they were injured by the Hermit's Peak/Calf Canyon Fire ("Hermit's Peak Fire"). Complaint at 4–9. Pursuant to the HPCC Act, Petitioners each submitted Notices of Loss (NOLs) between January 5, 2023 to March 29, 2023[2] to FEMA for compensation of both economic and non-economic damages from the Hermit's

---

[2] Anthony Gallegos submitted his NOL on January 29, 2023. 24cv170-AR-Gallegos-000003.
Olen C. Priddy submitted his NOL on January 5, 2023. 24cv170-AR-Priddy-000110.
Sheila Cavitt-Olguin submitted her NOL on March 8, 2023. 24cv170-AR-Cavitt-Olguin-000003.

Peak Fire. *Id.* In their Proofs of Loss (POLs), each Petitioner submitted documentation to support

their claimed damages. 44 C.F.R. § 296.30(b) (describing process by which "[a]ll claimants are

required to attest to the nature and extent of each injury for which compensation is sought"). FEMA

then sent each petitioner a Letter of Determination that provided less than their claimed

compensatory damages and/or denied noneconomic damages. Complaint at 4–9. Some Petitioners

filed notices of appeal to proceed through FEMA's internal administrative appeals process. Decl.

of L. Stearns, Doc. No. 12-1. No Petitioners received any decision on their administrative appeal.

*Id.*

**B.    In February 2024, Petitioners sued in District Court for judicial review of FEMA's "final decision" on their claims.**

The HPCC Act provides, "Any claimant aggrieved by a *final decision* of the Administrator

under this Act may, not later than 60 days after the date on which *the decision* is issued, bring a

civil action in the United States District Court for the District of New Mexico, to modify or set

aside *the decision*, in whole or in part" *Id.* § 104(i)(1) (emphasis added).

On February 20, 2024, which was around one year after each Petitioner submitted a NOL,

but within sixty days of FEMA's Letters of Determination (LOD), Petitioners brought suit in the

---

Tyler Kemp submitted his NOL on January 30, 2023. 24cv170-AR-Kemp-000052.
Deborah Leyba submitted her NOL on March 13, 2023. 24cv170-AR-Leyba-000167.
Rose Anna Marquez submitted her NOL on March 14, 2023. 24cv170-AR-Marquez-000152.
Daniel Joslin submitted the NOL underlying his present claim for judicial review on March 2,
2023. 24cv170-AR-Joslin-000365. Mr. Joslin submitted another NOL on February 28, 2024, after
the filing of this action. 24cv170-AR-Joslin-000003.
Gregory Lungstrum submitted his NOL on March 2, 2023. 24cv170-AR-Lungstrum-000702.
Juanita Maestas submitted her NOL on March 9, 2023. 24cv170-AR-Maestas-000041.
Candace Seaverns, on behalf of the Seaverns Family Living Trust, submitted its NOL on January
29, 2023. 24cv170-AR-SeavernsLT-000178.
Richard Ogorek submitted his NOL on March 29, 2023. 24cv170-AR-Ogorek-000126.
Juanita Herrera-Romero submitted her NOL on March 20, 2023. 24cv170-AR-Herrera-Romero-
000213.

District Court under HPCC Act § 104(i)(1) for judicial review of FEMA's "final decision." Petitioners' Complaint designates such "final decisions" as FEMA's "final determination" on their claims issued between December 2023 and February 2024—that is, their individual final Letters of Determination.[3] Complaint at 4–9. Some Petitioners concurrently sought judicial review of the "final decisions" while continuing with FEMA's administrative appeals process. Decl. of L. Stearns, Doc. No. 12-1.

### C.    Recently, the Court denied FEMA's motion to dismiss employing a definition of "final decision" different than what Petitioners challenge that renders Petitioners' action untimely.

FEMA filed a motion to dismiss the case for failure to exhaust administrative remedies, arguing, inter alia, that Petitioners' claims were not within the HPCC Act's waiver of FEMA's sovereign immunity to sue FEMA in District Court because Petitioners had not received any judicially reviewable "final decision" through completing FEMA's internal administrative appeals process. *See* Doc. No. 12 ("Motion to Dismiss").

The Court denied FEMA's Motion to Dismiss. Doc. 40. In the MOO, the Court determined that Petitioners exhausted their administrative remedies 180 days after they filed their NOLs. MOO at 107–108, n. 19 ("The Court's holding is that claimants without administrative appeals decisions have exhausted their administrative remedies once the 180-day clock runs . . . ."). The Court reasoned, "Whatever claim determination has been made at day 180 . . . is a judicially reviewable final decision, and the claimant has exhausted administrative remedies, as the limited sovereign immunity waiver of the Hermit's Peak Act requires." *Id.* at 102.  That 180-day deadline, rather than Petitioners' designated "final decision" as their respective, later Letters of Determination, was

---

[3] Petitioners only bring claims for review within the scope of the HPCC Act § 104(i)(1). In this suit, they do not bring any challenges for review of FEMA's agency actions or rulemaking under the Administrative Procedures Act.

the "final decision" triggering the 60-day clock to seek judicial review. The Court found that Petitioners "satisfy the exhaustion requirement in the sovereign immunity waiver of the Hermit's Peak Act" after observing that Petitioners' "counsel . . . has said they have been careful to file claims in federal court, under the Judicial Review Provision, within sixty days of each client's day 180." *Id.* at 108 & n.19. If any Petitioner fails to file within 60 days of their final decision, however, the Court stated that their suit for judicial review is untimely. The Court explained: "If any of the Plaintiffs wait longer than sixty days after receiving a final decision -- either in the form of an administrative appeal decision provided within 180 days or in the form of whatever pre-appeal claim determination they had at the 180-day mark -- to seek judicial review, then those Plaintiffs miss the Congressionally mandated deadline, and Congress has not waived FEMA's sovereign immunity." *Id.* at 103; *see also id.* at 107–108 n.19 ("Thus, according to the Court's holding, that claimant has missed their chance to come to federal court to challenge FEMA's compensation determination, because that claimant waited longer than sixty days after getting a final, judicially reviewable claim determination before coming to federal court."). As noted above, Petitioners' judicial review actions were filed more than sixty days after the "180-day mark" following submission of their NOLs, but rather approximately one year after Petitioners submitted their NOLs.

As part of the MOO, the Court found that for non-economic damages, exhaustion of administrative remedies was futile and Petitioners would suffer irreparable harm from delay of judicial review over their claims. *Id.* at 115–121. The Court also determined that that FEMA waived exhaustion for economic damages 180 days after any NOL because "the internal needs of the agency are fulfilled" at that point. *Id.* at 111–112, n.21 (quoting *Barlett v. Schweiker*, 719 F.2d at 1061).

Accordingly, the Court determined that Petitioners, having exhausted their administrative remedies 180 days after filing their NOLs, could proceed to judicial review of FEMA's "final decisions" on their HPCC Act claims on both economic and noneconomic damages. The Court did not identify, for the purposes of this hearing, whether the "final decision" for review was any FEMA determination in place at the earlier-in-time 180-day deadline or the later-in-time Letter of Determination that Petitioners placed at issue for review in their Complaint. *Id.* at 102–108; *see also id.* at 118 ("The Court has concluded that whatever is on the table at day 180 is the final claim determination. Thus, even if the last action is the initial claim determination, where FEMA denies noneconomic damages, that initial claim determination is a final, judicially reviewable denial of noneconomic damages.").

### D.   The Court ordered both FEMA and Petitioners to submit records for review at the upcoming May 5, 2025, judicial review hearing.

Early in this litigation, the Court issued a scheduling order to lodge the Administrative Record. Docs. 11, 24. Pursuant to that scheduling order, FEMA lodged the Administrative Record and a Supplement to the Administrative Record in July 2024. Docs. 23, 26, 27 (collectively, the "July 2024 Administrative Record"). Petitioners never objected to or moved to supplement the July 2024 Administrative Record, and their deadline to raise these issues lapsed. *See* Doc. 33 (order granting Petitioners request to extend their deadline to file objections to July 31, 2024).

After the MOO and in anticipation of the Court's May 5, 2025, judicial review hearing, the Court again ordered FEMA to lodge records by April 24, 2025 and also invited Petitioners to lodge their own records by April 28, 2025. Doc. No. 44. The Court did not specify the scope of the record for the hearing, including if the record should contain materials considered in making a "Final Decision" as of 180 days after filing of the NOLs in early 2023, as of the issuance of the challenged LODs, as of Petitioners' filing this action for judicial review in February 2024, or as of the date of

any later issued or amended LODs during the pendency of this litigation. *See id.* Nor did the Court provide any other procedures for the judicial review hearing, including procedures for pre-hearing briefing or motions or the identification of record materials.

Pursuant to the Court's order, on April 24, 2025, FEMA lodged an Administrative Record. This Record contained many of the documents from the July 2024 Administrative Record, organized by claimant and redacted for use at the hearing. The Record also contained additional documents submitted to FEMA, and up through April 2025, in the event that the Court determines that the final decision—and associated record materials for review—is a decision made after the issuance of the challenged LODs and the filing of this action. Doc. No. 47. On April 28, 2025, Petitioners lodged a supplement to the AR. Doc. No. 49 (the "Supplemental Record"). The Supplemental Record includes additional NOLs from 2023 to 2025, pictures from 2022 and 2023, other claims documents from 2023 to 2025, consulting invoices from 2023, one May 15, 2022, medical record for Petitioner Joslin, and an August 22, 2022, consulting report regarding diminution of value of property for Petitioner Lungstrum. Petitioners do not represent if the records were previously submitted to FEMA for consideration in issuing the "final decisions" subject to the Court's review or are being placed before the Court for the first time for review. *Id.*

## II.    <u>Legal Standards for the Scope of the Record Before the Court for Judicial Review under the HPCC Act</u>

### A.    **Judicial review is limited to an administrative record before FEMA at the time of its "Final Decision."**

The federal government, as sovereign, cannot be sued absent consent to suit or waiver of sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Petitioners bring suit under Section 104(i) of the HPCC Act, which this Court has determined is a limited waiver of sovereign immunity for this Court to review FEMA's final decisions under the HPCC Act. *Vigil v. FEMA*, No. 1:23-cv-941-JB-JFR, 2024 WL 2404487, at *27 ("Section 104(i)(1) constitutes a

limited waiver of sovereign immunity."). The full scope of that judicial review, including instruction to limit that review to the record made before the Agency, is as follows:

> HPCC Act § 104(i) Judicial Review.—
>
> (1) In general.—Any claimant aggrieved by a *final decision* of the Administrator under this Act may, not later than 60 days after the date on which *the decision* is issued, bring a civil action in the United States District Court for the District of New Mexico, to modify or set aside *the decision*, in whole or in part.
>
> (2) *Record*.—The court shall hear a civil action under paragraph (1) on *the record* made before the Administrator.
>
> (3) *Standard*.—The decision of the Administrator incorporating the findings of the Administrator *shall be upheld* if the decision is supported by *substantial evidence on the record considered as a whole*.
>
> (emphasis added).

This section of the HPCC Act contains three important limitations of the United States' waiver of sovereign immunity and the Court's judicial review. First, the subject of the Court's review is the "final decision of the Administrator" and whether the Court should "modify or set aside the decision." HPCC Act § 104(i)(1). Second, the Court "shall hear [the] action . . . on the record made before the Administrator." HPCC Act § 104(i)(2). Finally, the Court's review of that record shall consist of determining whether the Administrator's decision "is supported by substantial evidence on the record considered as a whole." HPCC Act § 104(i)(3). As a result, any review of non-final decisions, any review outside of the record made before the Administrator, and any review not for substantial evidence in the record fall outside the scope of that which is permitted by Section 104(i) of the HPCC Act and its waiver of sovereign immunity.

FEMA's regulations provide additional detail regarding the contents of the record for judicial review. "Pursuant to section 104(i) of the Act, the court may only consider evidence in the Administrative Record." 44 CFR § 296.43. "Administrative Record" is defined as:

> [A]ll information submitted by the claimant and all information collected by FEMA concerning the claim, which is used to evaluate the claim and formulate the Authorized Official's Determination. It also means all information that is submitted by the claimant of FEMA in an administrative Appeal and the decision of the Administrative Appeal. It excludes the opinions, memoranda and work papers of FEMA attorneys and drafts of documents prepared by Claims Office personnel and contractors.

44 CFR § 296.4.

The Court has previously recognized the limited scope of this judicial review, including as defined by 44 CFR § 296.43. In *Vigil v. FEMA*, 2024 WL 2404487, at *27, the Court explained, "In reviewing the Administrator's final decision, the district court 'may only consider evidence in the Administrative Record,' and the Court must 'uphold FEMA's decision if it is supported by substantial evidence on the record considered as a whole.'" (quoting 44 C.F.R. § 296.43).

Case law from other judicial review actions of agency decision-making further confirms that "the record" for review under the HPCC Act is the administrative record before FEMA at the time of its "final decision." For example, the Supreme Court interpreted the National Labor Relations Act, 29 U.S.C. § 141–197, to provide that "[u]nder the substantial-evidence standard, a court looks to *an existing administrative record* and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (*compare* HPCC Act § 104(i)(3) *with* 29 USC § 160(e) "The findings of the [National Labor Relations Board] with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."). So too here, the Court's review under Section 104(i) of the HPCC Act must be limited to the record made before the Agency when making the challenged final decision.

**B.      The Record must be complete for the Court to review the "final decision" for substantial evidence on the record as a whole—nothing more and nothing less.**

"The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Bar MK Ranches v. Yuetter*,

994 F.2d 735, 739 (10th Cir. 1993). "[A]s long as Defendants submitted all documents and information considered and developed at all [] stages of the [agency's] review process, nothing more and nothing less, the Administrative Record submitted to the district court was correct." *Id.*

      **1.**      **Nothing more—the Court is limited to the administrative record when reviewing for substantial evidence.**

      The HPCC Act explicitly limits the Court's review to "the record made before the Administrator." HPCC Act § 104(i)(2). That "record" is the Administrative Record. 44 CFR § 296.43; *see also supra* II.a. Indeed, documents not presented to the Agency inherently cannot be part of any "record made before the Administrator." HPCC Act § 104(i)(2). "The decision of the Administrator incorporating the findings of the Administrator shall be upheld if the decision is supported by substantial evidence on the record considered as a whole." HPCC Act § 104(i)(3). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *T-Mobile South, LLC*, v. *Roswell*, 574 U.S. 293, ___, (2015)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek*, 587 U.S. at 102–103 (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U. S. 197, 229 (1938)) (alteration in original). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. It is "more than a mere scintilla." *Id.* (quotation omitted). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

      The substantial evidence standard is significant in limiting the Court to review upon an administrative record. For example, the Employee Retirement Income Security Act of 1974 ("ERISA") provides for judicial review of certain agency decisions for substantial evidence, and

of others de novo. Under ERISA reviews for substantial evidence, "the court must consider only the record before the plan administrator at the time it reached its decision. [Courts should not consider or rely] upon evidence not part of the administrative record. [Nor should courts] consider arguments that do not appear in the administrative record." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992) (quoting *Voliva v. Seafarers Pension Plan*, 858 F.2d 195, 196 (4th Cir. 1988) (brackets in original). In contrast, where judicial review of denial of benefits under ERISA is de novo, the Tenth Circuit "agrees with the Fourth Circuit that the best way to implement ERISA's purposes in this context is ordinarily to restrict de novo review to the administrative record, but to allow the district court to supplement that record 'when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision.'" *Hall v. UNUM Life Ins. Co.*, 300 F.3d 1197, 1202 (10th Cir. 2002) (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993) (en banc)) (emphasis added).

Materials that were not before the agency at the time of challenged decision are not properly part of the administrative record. *See In re United States*, 583 U.S. 1029, 1030–1031 (2017) (Breyer, J., Ginsburg J., Sotomayor, J., and Kagan, J., dissenting) (explaining in dissent from stay of orders "to the extent they require discovery and addition to the administrative record" that "We held in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) that the 'whole record' means 'the full administrative record that was before the Secretary at the time he made his decision.'"). For example, "the testimony of the decisionmaker, at issue in *Morgan* and *Overton Park*, cannot be deemed properly part of the administrative record in any event, because it did not exist until after the agency decision had been made." *Id.* at 1032 (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) ("The focal point for judicial review should

be the administrative record already in existence, not some new record made initially in the reviewing court." (internal brackets and citation omitted))).

This means HPCC Act claimants cannot provide evidence to the Court that was not first presented to FEMA in support of their claims. "If a plan participant fails to bring evidence to the attention of the administrator, the participant cannot complain of the administrator's failure to consider this evidence." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992). "In effect, a curtain falls when the fiduciary completes its review, and for purposes of determining if substantial evidence supported the decision, the district court must evaluate the record as it was at the time of the decision." *Id.*

### 2.    Nothing less—the Court must have the full administrative Record.

Under "whole record" review, the agency provides the entire Administrative Record, rather than only some evidence that is supportive of its position from the materials presented to it. Section 104(i)(3) of the HPCC Act provides, "The decision of the Administrator incorporating the findings of the Administrator shall be upheld if the decision is supported by substantial evidence on the record *considered as a whole*." (emphasis added). "[B]ecause our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) (quotation omitted). Accordingly, "[e]ffective review depends upon the administrative record containing all relevant materials presented to the agency, including not only materials supportive of the government but also materials contrary to the government's decision." *In re United States*, 583 U.S. at 1030–1031 (2017) (dissent) (citing *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mus. Automobile Ins. Co*, 462 U.S. 29, 43–44 (1983)). "Indeed, judicial review cannot function if the agency is permitted to decide unilaterally what documents it submits to the

reviewing court as the administrative record." *In re United States*, 583 U.S. at 1030–1031 (2017) (dissent); *see also Bar MK Ranches*, 994 F.2d at 739 ("An agency may not unilaterally determine what constitutes the Administrative Record.").

**C.    There is a rebuttable presumption that the agency has properly designated the AR.**

The agency's "designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity." *Bar MK Ranches*, 994 F.2d at 739 (citing *Wilson v. Hodel*, 758 F.2d 1369, 1374 (10th Cir. 1985). "The Court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary." *Id.*

This presumption of administrative regularity indicates that the agency is the appropriate party to compile the Administrative Record before the Court. Despite no express statement in the Administrative Procedure Act that the agency is the party to compile the record for judicial review, the Supreme Court has determined that "the 'whole record' compiled *by the agency*" is "the basis for review required by § 706 of the Administrative Procedure Act." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971) (emphasis added). Similarly here, the HPCC Act's directive that the "court shall hear a civil action . . . on the record made before the Administrator," § 104(i)(2), should be read as providing that FEMA is the entity to prepare the administrative record for judicial review. *See also* 44 C.F.R. § 296.4 (defining "Administrative Record" as "all information submitted by the claimant and all information collected by FEMA concerning the claim, which is used to evaluate the claim and to formulate the Authorized Official's Determination").

**D.    Two different standards for adding documents after the Administrative Record has been certified.**

There are two different scenarios for presenting to the court documents after the agency has certified the Administrative Record. First, a court may "complete" or "correct" the record with documents that should have been part of the Administrative Record, yet which the agency failed to include. Second, a court may "supplement" the record with documents not properly part of the Administrative Record, but which should be considered regardless.

**1.    Standards for completing/correcting the Record.**

Parties may seek to add evidence, "through limited discovery," if "a showing is made that the record is not complete"—i.e. that evidence was properly considered and developed by the agency in rendering its decision but is absent in the Record submitted to the Court. *Bar MK Ranches*, 994 F.2d at 740. However, parties must first "overcome the presumption of regularity" afforded to the agency in designating the Administrative Record, or else make a "'strong showing' of improper behavior in development of the record." *Citizens For Alternatives To Radioactive Dumping v. U.S. Dep't of Energy*, 485 F.3d 1091, 1097 (10th Cir. 2007). "Clear evidence" that the agency did not the properly designate the Administrative Record can rebut the presumption of regularity. *Id*.

**2.    Standards for supplementing the Record.**

There are "'extremely limited' circumstances," where the Court "may supplement the administrative record or consider extra-record evidence." *Rocky Mountain Peace & Justice Ctr. v. United States Fish & Wildlife Serv.*, 40 F.4th 1133, 1160 (10th Cir. 2022) (quoting *Am. Mining Cong. v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985)). The Tenth Circuit adopted the following limited exceptions to include extra-record evidence:

(1) the record is deficient because the agency ignored relevant factors it should have considered, (2) the agency considered factors that were left out of the formal record, and

(3) evidence coming into existence after the agency acted demonstrates that the actions were right or wrong.

*Rocky Mountain Peace & Justice Ctr.*, 40 F.4th at 1160 (internal citation and quotations omitted). Under either of these strict standards for completing or supplementing the Record, Petitioners should be required to establish their burden that the Record prepared by FEMA is deficient by motion to the Court.

### III.    Argument

**A.    The Record for review under Section 104(i) is limited to materials submitted to or generated by FEMA as of the date of the "final decision" that is the subject of judicial review.**

The Court's review is limited to FEMA's final decision. HPCC § 104(i)(1); *see also* MOO at 90 ("A final decision is the judicially reviewable decision."). Petitioners, in their Complaint, identify one specific final decision—the Letter of Determination—for each Petitioner for the Court's review. Complaint at 4–9. The Court, in reviewing this one "final decision," should limit the Administrative Record to the records leading up to the "final decision."

In addition to review being limited to a final decision, the Court's review must also be of the record made before FEMA. The HPCC Act requires the Court to "hear a civil action under paragraph (1)," which is for judicial review of a final decision, "on the record made before the Administrator." HPCC Act § 104(i)(1) and (2).

Finally, the HPCC Act requires that the record be reviewed, in its totality, for substantial evidence supporting the challenged final decision. HPCC Act § 104(i)(3) ("The decision of the Administrator incorporating the findings of the Administrator shall be upheld if the decision is supported by substantial evidence on the record considered as a whole."). The Act's reference to the Court's review "on the record considered as a whole" does not expand the record on review beyond that which was made before FEMA, but rather it is a qualification for how the Court should

conduct its substantial evidence review. *See supra* II.B.2. "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek*, 587 U.S. at 102 (2019) (quotation omitted). "Under the substantial-evidence standard, a court looks to an *existing* administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Id.* (quotation omitted) (emphasis added).

"[T]he basic requirement for substantial-evidence review" is to "produce a record that is to be the basis of an agency action." *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 415 (in dicta). As part of this substantial evidence review, "the court must consider only the record before the [agency] at the time it reached its decision." *Sandoval*, 967 F.2d at 380. This is unlike de novo review where the Court may supplement the record "when circumstances clearly establish that additional evidence is necessary to conduct an adequate review of the benefit decision." *Hall v. UNUM Life Ins. Co.*, 300 F.3d at 1202 (quotation omitted). However, even then, the court "ordinarily restricts de novo review to the administrative record." *Id.* In contrast, the Court has no need to develop the record further in conducting a substantial-evidence review as it "may neither reweigh the evidence nor substitute our discretion for that of the [Commissioner].'" *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quoting *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995) (brackets in original). Simply put, if Petitioners "fail[ed] to bring evidence to the attention of the administrator, the [claimant] cannot complain of the administrator's failure to consider this evidence." *Sandoval*, 967 F.2d at 381. "In effect, a curtain falls when the [agency] completes its review." *Id.*

Petitioners argued at the status conference in which the Court scheduled this hearing that they should be able to introduce non-record evidence of noneconomic damages because FEMA

16

categorically denied their claims for such damages and their administrative appeals have been held in abeyance. *See also* Doc. 52 at 22 (stating that "Plaintiffs will present oral testimony from" all Petitioners). This does not warrant the introduction of extra-record evidence, including testimony, for many reasons. First, Petitioners had a full opportunity to submit evidence in support of their noneconomic damages claims by including any supporting documentation with their POLs. Indeed, Petitioners did include narrative statements, photographs, and other documents in an effort to substantiate their noneconomic damages claims. Second, for those Petitioners who pursued administrative appeals, even if they had been able to pursue those appeals to completion they would not necessarily have been able to present live testimony. 44 C.F.R. § 296.42(g) (stating that the "Director of the Claims Office may exercise the discretion to convene an informal hearing to receive oral testimony from witnesses or experts"). Third, even if Petitioners could show that the evaluation of their claims for noneconomic damages could benefit from the introduction of additional evidence, such evidence is beyond the scope of the Court's permissible review and the Government's waiver of sovereign immunity. HPCC Act, § 104(i)(2). Finally, the HPCC Act does not contain any language that would allow the Court to order additional evidence to be taken before the agency. *See generally,* HPCC Act. This is in contrast with Section 405(g) of the Social Security Act which states that the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding."

This Court, limited to the Administrative Record and without further grant of authority through the HPCC Act, should limit its review to those documents before FEMA's Administrator at the time of the challenged final decision.

**B.     FEMA should compile and certify the AR.**

Under Tenth Circuit and Supreme Court authority, the agency compiles and certifies the Administrative Record for judicial review of agency actions under the APA. *See supra II.2.c.*; *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 419; *Bar MK Ranches*, 994 F.2d at 739. The HPCC Act is similar to the APA in that it provides for judicial review of agency action, except it specifies that the only agency action for judicial review is FEMA's "final decision" regarding compensation of claims under the HPCC Act. *See* HPCC Act §§ 104(d) and (i). Where the agency compiles and certifies the AR for judicial review of agency action under the APA, so too should the agency compile and certify the AR for judicial review of agency action under the HPCC Act. The Tenth Circuit, in determining that designation of the Administrative Record is an administrative proceeding and creating a presumption of regularity for the Agency's certification of the Administrative Record, implicitly provides that the agency compiles the Administrative Record for judicial review of agency actions. *Bar MK Ranches*, 994 F.2d at 739.

There are practical reasons for FEMA to compile and certify the Administrative Record too. First, FEMA is the most knowledgeable party regarding what documents and evidence it collected, developed, and considered when evaluating Petitioners' claims. In fact, no other party can compile the comprehensive administrative record needed for whole record review; only FEMA has "all information submitted by the claimant and all information collected by FEMA concerning the claim, which is used to evaluate the claim and to formulate the Authorized Official's Determination." 44 C.F.R. § 296.4 (defining "Administrative Record"). Second, it would conserve judicial resources for FEMA to be the only party to submit an Administrative Record. There are 12 petitioners in this case and the MOO in total affects over 200 claimants so far. FEMA provides final decisions unique to all of these claimants. Judicial review necessitates that the Court review each "final decision" and every Administrative Record. For both FEMA and over 200 claimants

to submit their own Administrative Records, and then compare dueling records against each other, would be cumbersome and inefficient for the Court. And despite any skepticism over whether the agency will adequately compile the AR, the Tenth Circuit has determined that "[t]he Court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary." *Bar MK Ranches*, 994 F.2d at 739 (citing *Wilson v. Hodel*, 758 F.2d at 1374).

**C.      The Court should exclude Petitioners' supplemental documents and any extra-record testimony.**

On April 28, 2025, Petitioners submitted supplements to the Administrative Record. *See* Doc. 49 (the "Supplemental Record"). Petitioners have also argued at a status conference and suggested in their Review Hearing Brief that they intend to present oral testimony from witnesses at the May 5, 2025, hearing. Doc. 52 at 22. This includes testimony from all twelve Petitioners, and an engineer and two arborists who submitted reports in support of some of the Petitioners' claims. At a status conference, the Court also indicated it may allow live testimony during the Hearing, at least with respect to statements made to FEMA during the claims process that are not reflected in the Record.  All such non-Record documents and testimony should be excluded from the Hearing and the Court's Judicial Review. The Court's judicial review is expressly limited to the Record. Nor have Petitioners rebutted the Record's presumption of regularity that would permit the Court to correct or supplement the Record.

**1.      Extra-record documents and testimony should be excluded from the Record.**

Petitioners lodged a Supplemental Record consisting of approximately 117 documents on April 28. Doc. 49. Petitioners have not provided a certification of the Supplemental Record or offered any explanation of whether these documents were ever submitted to FEMA in connection with their claims or are part of the "record made before the Administrator" that is the subject of the Court's judicial review. HPCC Act, § 104(i)(2). The Court should exclude Petitioners'

Supplemental Record from the Hearing and its review because Petitioners fail to argue the "extremely limited circumstances" where the Court may admit evidence not considered by the agency. *Rocky Mountain Peace & Just. Ctr.*, 40 F.4th at 1160.

Petitioners' attempts to present witness testimony at the Hearing is even more at odds with the judicial record review permitted by the HPCC Act. Any testimony offered by Petitioners or their putative experts at the Hearing is evidence not considered by the agency, let alone that which was considered by the Administrator in making a final decision, such that it can form part of the Administrative Record. HPCC Act, § 104(i)(2); 44 C.F.R. § 296.4. By permitting such testimony, the Court would be reviewing FEMA's final decisions on Petitioners' claims based on evidence that was never offered to the Agency in an effort to determine if the Agency's determinations based on different record materials were supported by substantial evidence. This is contrary to the inherent nature of judicial review of an administrative record. *See Franklin Sav. Ass'n v. Dir., Off. of Thrift Supervision*, 934 F.2d 1127, 1140 (10th Cir. 1991) (finding that "the district court erred in improperly expanding the scope of its review" where the court "heard live testimony from twenty-five witnesses, . . . received over 650 trial exhibits . . . and basically made its own findings" in administrative record review).

The Court is limited to reviewing an existing Administrative Record for substantial evidence supporting FEMA's final decision. *See supra* III.A. A substantial evidence standard necessitates limiting judicial review to "an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek,* 587 U.S. at 102–103 (quoting *Consolidated Edison Co.*, 305 U.S. at 229) (emphasis deleted). The extra-record documents and later testimony Petitioners seek to introduce would not be part of that

existing administrative record—that is, "the record made before the Administrator." HPCC Act §
104(i)(2).

In addition, the Record is closed and Petitioners have waived their ability to submit
additional evidence in support of their claim three times. First, Petitioners waived submitting
additional evidence or providing additional testimony by seeking judicial review of a "final
decision." The "substantial evidence" standard of review precludes the Court from considering
other evidence that was not before FEMA at the time of the challenged "final decision." *See supra*
III.A. Petitioners do not explain why any evidence not submitted to FEMA should be admitted for
the first time for the Court, which is limited to hearing this civil action "on the record made before
the Administrator." HPCC Act § 104(i)(2). As explained previously, the Court lacks the ability to
order new evidence or develop the record when conducting a judicial review of a final decision for
substantial evidence upon the record before the Administrator. *See supra* III.A. "In effect, a curtain
falls when the fiduciary completes its review, and for purposes of determining if substantial
evidence supported the decision, the district court must evaluate the record as it was at the time of
the decision." *Sandoval*, 967 F.2d at 381.

Second, Petitioners waived the ability to submit additional evidence by representing that
they could proceed to judicial review of their claims because exhaustion was futile. Doc. 28 at 13–
14. The Court agreed. MOO at 115–117. As the Court explained in *Vigil*, "Futility is established
if exhausting administrative remedies 'would not serve the policies underlying exhaustion.'" *Vigil*,
2024 WL 2404487 at *31 (internal quotations omitted). "Exhaustion is generally . . . to compile a
record which is adequate for judicial review." *Id.* (quoting *Weinberger v. Salfi*, 422 U.S. at 765).
In arguing for the futility of the exhaustion of their administrative remedies, Petitioners represented
the Administrative Record would not benefit from any further development, such as through an

administrative appeals process for additional documents or testimony. Doc. 28 at 11 and 13. Petitioners cannot argue that exhaustion is not necessary and yet also attempt to develop post-decisional evidence to challenge FEMA's determinations. For example, in their Supplemental Record Petitioners include a December 17, 2024, Amended Smoke & Ash Worksheet and a April 4, 2025, Evacuation Worksheet for Petitioner Priddy.

Third, Petitioners have had the opportunity to present witness statements and other evidence in support of their claim during the claims process. *See* 44 C.F.R. § 296.30(a), (b) (describing burden of proof for claimants to substantiate their claims and procedures for submitting proof of loss materials). Petitioners filed the current action for judicial review in February 2024. It is unclear why they did not submit to FEMA any evidence that pre-dates the challenged LODs or included any witness statements that they would now attempt to present via live testimony. This failure is fatal, as "[i]f a plan participant fails to bring evidence to the attention of the administrator, the participant cannot complain of the administrator's failure to consider this evidence." *Sandoval*, 967 F.2d at 381.

During the present litigation, the Court also ordered Petitioners to move to object or supplement the prior Administrative Record and granted Petitioners' request to extend their deadline for filing objections to July 31, 2024. Doc. No. 33. However, Petitioners never filed objections or moved to supplement the Administrative Record with documents or testimony. *See generally* Docket. In total, Petitioners have waived the ability to seek to supplement the Administrative Record with additional evidence at multiple stages both prior to and during litigation. Even now, Petitioners do not attempt to explain why these additional materials meet the strict criteria for correcting or supplementing the Administrative Record.

Finally, allowing Petitioners to testify and to offer additional expert testimony would be prejudicial against FEMA. FEMA does not know which Petitioners would offer testimony and what the contents of any such testimony would entail. FEMA's final decision, based on the record before it at the time of that final decision, cannot be set aside or modified based on evidence that was never presented to it when making that final decision. The Court would not be hearing this action "on the record made before the Administrator" but, instead impermissibly upon "some new record made initially in the reviewing court." HPCC Act § 104(i)(2); *Bar MK Ranches*, 994 F.2d at 739. Accordingly, FEMA respectfully requests the Court to exclude Petitioners' Supplemental Record documents and planned testimony at the Hearing.

> **2.    If Petitioners seek to correct or complete the Record, Petitioners must show FEMA improperly designated the Record, and that the proffered documents were both previously submitted to FEMA and omitted from the Record.**

It is unclear which of Petitioners' documents in the Supplemental Record were previously submitted to FEMA. Petitioners have not offered a certification of their Supplemental Record or identified which, if any, of the Supplemental Record documents were previously submitted to FEMA yet omitted from the Administrative Record.

Prior to submitting any documents to correct or complete the Record, Petitioners were required to, but did not, present "clear evidence," that FEMA improperly designated the Administrative Record. *Bar MK Ranches*, 994 F.2d at 739 (citing *Wilson v. Hodel*, 758 F.2d at 1374). This is required in order to show that the Administrative Record is incomplete or incorrect and thus add to that Record. Moreover, Petitioners would also need to demonstrate that any improper designation was not harmless error. *Bar MK Ranches*, 994 F.2d at 740 (the agency's designation of the Administrative Record is an "administrative procedure" and "[t]he harmless error rule applies to judicial review of administrative proceedings[.]").

It is proper for FEMA to exclude documents submitted to it that are outside the Administrative Record. In arguing that FEMA improperly designated the Administrative Record, Petitioners must also demonstrate that the documents they seek to lodge are within the scope of the Administrative Record. Some documents fail on their face. In their Complaint, Petitioners place FEMA's "final decisions" on their claims before the Court to review under the HPCC Act. Documents that represent new or amended claims after Petitioners filed for judicial review cannot be part of the existing "final decision," as they are continuing or new claims that post-date the final decisions that Petitioners seek to submit for judicial review in the Complaint. The Court should therefore exclude any later-filed claims from the Administrative Record, such as the April 12, 2024, amended NOL for Petitioner Joslin, the March 20, 2025, annotated Final Letter of Determination for Petitioner Leyba, and the April 21, 2025, claims withdrawal letter from Petitioner Gallegos. And evidence never submitted to FEMA, such as any witness testimony at the Hearing, was never part of record presented to the Administrator for review and thus cannot comprise any part of the Administrative Record.

Accordingly, FEMA respectfully requests if the Court is inclined to include any part of Petitioners' Supplemental Record, it first require Petitioners to meet their burden of persuasion to complete or correct the record.

### IV.    <u>Conclusion</u>

For the foregoing reasons, FEMA respectfully requests that the Court to (1) limit its judicial review to the Administrative Record developed by FEMA as of the date of the judicially reviewable "final decision," and (2) exclude Petitioners' Supplemental Record documents and any live witness testimony at the Hearing and during the Court's judicial review.

RYAN ELLISON
United States Attorney

*/s/ Nicholas M. Sydow*_____
Carrie Y. Yang
Rafael Go
Nicholas M. Sydow

Assistant United States Attorneys
201 Third St. NW, Suite 900
Albuquerque, NM 87103
(505) 224-1409
carrie.yang@usdoj.gov
rafael.go@usdoj.gov
nicholas.sydow@usdoj.gov

**Attorneys for Federal Respondent**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 1, 2025, I filed the foregoing document electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Nicholas M. Sydow*_____
Nicholas M. Sydow
Assistant United States Attorney