## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ANTHONY GALLEGOS, OLEN C. PRIDDY,
SHEILA CAVITT-OLGUIN, TYLER KEMP,
DEBORAH LEYBA, ROSE ANNA MARQUEZ,
DANIEL JOSLIN, GREGORY LUNGSTRUM,
JUANITA MAESTAS, CANDACE SEAVERNS
on behalf of THE SEAVERNS FAMILY
LIVING TRUST, RICHARD OGOREK, and
JUANITA HERRERA-ROMERO,

          Plaintiffs/Petitioners,

     v.                                No. 1:24-cv-00170-JB-JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY, and DOES 1-20, INCLUSIVE,

          Defendants/Respondents.

## DEFENDANT/RESPONDENT FEDERAL EMERGENCY MANAGEMENT AGENCY'S PRE-JUDICIAL REVIEW HEARING BRIEF

       Defendant/Respondent Federal Emergency Management Agency (FEMA) submits the following brief in advance of the Court's judicial review hearing pursuant to Section 104(i) (the "Hearing") of the Hermit's Peak/Calf Canyon Fire Assistance Act ("HPCC Act"). Although the Court's order setting the Hearing did not contain procedures for any related briefing or motion practice, Doc. 45, FEMA offers this brief to outline the relevant law and procedural history to assist the Court in its judicial review of FEMA's claim determinations. FEMA also responds to some of the law and procedural history contained in Plaintiffs/Petitioners' Review Hearing Brief, Doc. 52.

       FEMA is a federal disaster relief agency whose mission is "helping people before, during and after disasters." www.fema.gov/about (last accessed May 1, 2025). In 2022, the Hermit's Peak Fire and Calf Canyon Fire (collectively, "HPCC Fire") were major disasters that "scorched over

340,000 acres of land in northeastern New Mexico, destroying over 900 structures, and forcing the evacuation of over 15,000 households throughout Mora, San Miguel and Taos Counties." Memorandum Opinion and Order, Doc. No. 17, at 7 (citations omitted). Through the HPCC Act and continuing resolutions, Congress appropriated $5.45 billion in compensation to people harmed by the Hermit's Peak/Calf Canyon Fire ("HPCC Fund"). Congress appointed FEMA as the HPCC Fund Administrator and directed FEMA to establish a claims office to "receive, process, and pay claims" in accordance with the HPCC Act. HPCC Act §§ 103(1); 104(a)(1) and (2).

Petitioners are eleven individuals and one living trust that submitted to FEMA claims for injuries from the HPCC Fire. Doc. 1 at 4–9. FEMA issued claim awards to Petitioners for their injuries subject to FEMA's discretion and limitations under the HPCC Act, and based on the evidence before it at the time of each award. Accordingly, for every claim line-item, FEMA offered awards that were more than, equal to, or less than Petitioners' requested amounts. Petitioners seek judicial review of FEMA's "final decision" of compensation awards under § 104(i) of the HPCC Act. Any claim line-items that Petitioners accepted or were not contained in a final decision that Petitioners challenged are not a proper subject of this judicial review action. Petitioners' Review Hearing Brief identifies to FEMA and the Court for the first time some of damages that they would like for the Court to review and the bases for these challenges, which are a mixture of noneconomic damages and economic damages unique to the factual circumstances of each Petitioner. Doc. No. 52.

For these remaining claims at issue, FEMA submits this Brief in anticipation of the Court's May 5, 2025, hearing to explain (1) the procedural history of this action, (2) the scope of the Court's record review, (3) the standard of review, (4) the law governing FEMA's determination of damages under the HPCC Act, (5) the allowable relief Petitioners may obtain under the judicial

review provision of the HPCC Act, and (6) some of the law relevant to Petitioners' challenges to the damages awards identified in their Hearing Brief.

## I.    Procedural History and Its Implications for the Court's Review

Between January 5, 2023 to March 29, 2023, Petitioners each initiated claims for compensation under the HPCC Act by filing Notices of Loss (NOLs) with FEMA for compensation of both economic and non-economic damages from the Hermit's Peak Fire. *Id.*[1] Later, in their accompanying Proofs of Loss (POLs), each Petitioner submitted documentation to support their claimed damages in their NOLs. 44 C.F.R. § 296.30(b) (describing process by which "[a]ll claimants are required to attest to the nature and extent of each injury for which compensation is sought"). FEMA sent each petitioner final Letters of Determination (LODs) between December 2023 and February 2024. Doc. 1 at 4–9.

---

[1]
- Anthony Gallegos submitted his NOL on January 29, 2023. 24cv170-AR-Gallegos-000003.
- Olen C. Priddy submitted his NOL on January 5, 2023. 24cv170-AR-Priddy-000110.
- Sheila Cavitt-Olguin submitted her NOL on March 8, 2023. 24cv170-AR-Cavitt-Olguin-000003.
- Deborah Leyba submitted her NOL on March 13, 2023. 24cv170-AR-Leyba-000167.
- Rose Anna Marquez submitted her NOL on March 14, 2023. 24cv170-AR-Marquez-000152.
- Daniel Joslin submitted the NOL underlying his present claim for judicial review on March 2, 2023. 24cv170-AR-Joslin-000365. Mr. Joslin submitted another NOL on February 28, 2024, after the filing of this action. 24cv170-AR-Joslin-000003.
- Gregory Lungstrum submitted his NOL on March 2, 2023. 24cv170-AR-Lungstrum-000702.
- Juanita Maestas submitted her NOL on March 9, 2023. 24cv170-AR-Maestas-000041.
- Candace Seaverns, on behalf of the Seaverns Family Living Trust, submitted its NOL on January 29, 2023. 24cv170-AR-SeavernsLT-000178.
- Richard Ogorek submitted his NOL on March 29, 2023. 24cv170-AR-Ogorek-000126.
- Juanita Herrera-Romero submitted her NOL on March 20, 2023. 24cv170-AR-Herrera-Romero-000213.

On February 20, 2024, Petitioners filed this action seeking judicial review of FEMA's claim determinations pursuant to Section 104(i) of the HPCC Act. Doc. 1. The action was filed within 60 days of the Letters of Determination challenged in Petitioners' "Complaint." Doc. 1 at 4–9, ¶¶ 10–21. It was filed well after, however, 180 days had elapsed since Petitioners filed their NOLs. *See supra* note 1. Petitioners brought "this civil action under section 104(i)(1) to modify or set aside FEMA's decision" on their claims. Doc. 1 at 3, ¶ 5.

Petitioners contended that they had exhausted necessary administrative remedies and had "final decisions" subject to judicial review. *See* Doc. 28 at 11 and 13; *see also* Doc. 1 at 4–9 (describing LODs as "final determinations" and "final decisions"). After Petitioners filed this action, however, and while the suit for judicial review was pending, all twelve Petitioners continued to proceed through FEMA's claims and/or administrative appeal process. Accordingly, since this action was filed, eight Petitioners have accepted some or almost all of FEMA's original or revised awards.[2] One Petitioner, Sheila Cavitt-Olguin, accepted all of FEMA's award, other

---

[2] Signed Release and Certification Forms for Petitioners are contained in the Administrative Record as follows:

- Petitioner Gallegos: May 13, 2024, 24cv170-AR-Gallegos-000062.
- Petitioner Cavitt-Olguin: January 22, 2024, 24cv170-AR-Cavitt-Olguin-000133.
- Petitioner Kemp: June 20, 2024, 24cv170-AR-Kemp-000013; June 25, 2024, -000140, -000144; October 29, 2024, -000100, -000075.
- Petitioner Marquez: March 6, 2024, 24cv170-AR-Marquez-000085.
- Petitioner Joslin: December 11, 2023, 24cv170-AR-Joslin-000396; July 26, 202; -000408; August 23, 2024; -000542; September 4, 2024, -000701; November 12, 2024, -000370.
- Petitioner Maestas: May 31, 2024, 24cv170-AR-Maestas-000112; October 23, 2024, -000063; December 26, 2024, -000254, -000056, and -000248.
- Petitioner Seaverns Family Living Trust: May 29, 2024, 24cv170-AR-SeavernsLT-001210, -001396, -001415, -001544; January 10, 2025, -000008, -000074; January 10, 2025, -000069.
- Petitioner Ogorek: March 8, 2024, 24cv170-AR-Ogorek-000189; May 30, 2024, -000193.
- Petitioner Herrera-Romero: April 2, 2024, 24cv170-AR-Herrera-Romero-000055, -000099

than its denial of noneconomic damages, prior to the filing of this action. *See* 24cv170-AR-Cavitt-Olguin-000133 (dated January 22, 2024). Of the 12 Petitioners, only three—Petitioners Lungstrum, Leyba, and Priddy—have not accepted any award.

There are also additional "final" Letters of Determination sent to many of the Petitioners after they sought the Court's review of their December 2023 to February 2024 Letters of Determination. For example, after initiating judicial review, six Petitioners (Leyba, Joslin, Kemp, Lungstrum, Priddy, and Seaverns Family Living Trust) requested recission of their Letters of Determination. Compl. at 5-8, ¶¶ 11, 13-14, 16-17, 19; 24cv170-AR-SeavernsLT-000980. Thereafter, they continued to engage with FEMA and received later Letters of Determination. In summary, while judicial review of the "final decision" (the December 2023-February 2024 Letters of Determination) was pending, all Petitioners continued to develop their claims and submit new evidence, whether through the administrative appeals process or through the original claims process, and many received additional determinations from FEMA.

This procedural history—including Petitioners bringing the judicial review action more than 60 days after 180 days have elapsed since their NOLs and Petitioners' continued requests for agency action on their claims during the pendency of this action—makes it unclear how the judicial review is intended to proceed. First, following the rulings contained in the Court's Memorandum Opinion & Order denying FEMA's motion to dismiss, Petitioners' action is untimely and outside the scope of the Court's judicial review. In that Opinion, the Court determined that "[w]hatever claim determination has been made at day 180 . . . is a judicially reviewable final decision, and the claimant has exhausted administrative remedies, as the limited sovereign immunity waiver of the Hermit's Peak Act requires." Doc. 40 at 102. The Court then cautioned that "[i]f any of the Plaintiffs wait longer than sixty days after receiving a final decision -- either in the form of an administrative appeal decision provided within 180 days or in the form of whatever pre-appeal

claim determination they had at the 180-day mark -- to seek judicial review, then those Plaintiffs miss the Congressionally mandated deadline, and Congress has not waived FEMA's sovereign immunity." *Id.* at 103. The Court determined that "chances of a Plaintiff missing the deadline is low, if non-existent" because "Plaintiffs' counsel, who represents the vast majority of fire victims seeking to file suit in federal court, has said that they have been careful to file claims in federal court, under the Judicial Review Provision, within sixty days of each client's day 180." *Id.* at 108, n. 19. As noted above, this is contrary to the procedural history here, where the action was filed approximately half a year after "each client's day 180."

The Court's Opinion on the Motion to Dismiss and Order setting the Hearing also have not identified whether the December 2023 to February 2024 Letters of Determination, which were provided must later than "each client's day 180," are the "final decisions" that are the subject of the Court's judicial review under Section 104(i)(1). Nor has the Court ruled whether any later Letters of Determinations, including to LODs replace those rescinded at claimants' request, are before the Court as final decisions. If the LODs challenged in the "Complaint" are not the "final decisions" subject to the Court's review, it is unclear which agency decisions—and corresponding "record made before the Administrator," HPCC Act, § 104(i)(2)—are the subject of the Court's judicial review. Identification of the appropriate "final decision" for review is necessary to calculate whether Petitioners have timely sought judicial review, and for the Court to review the correct decision and upon the Administrative Record relating to that decision under the HPCC Act. FEMA has objected and continues to object to the consideration of materials outside of the "record made before the Administrator" in making the challenged "final decisions." *See generally* Motion in Limine, Doc. 56. As the Court has held, "A final decision is the judicially reviewable decision. There may be several decisions before the 180 days pass, but once the 180-day deadline passes, there is only one decision -- the final one, which is the judicially reviewable decision." MOO, Doc.

40, at 90. Following this reasoning, any determinations outside of these "final decision" are not properly subject to the Court's judicial review and the Government's limited waiver of sovereign immunity. *See also id.* at 91 (determining that the HPCC Act "does not authorize FEMA to decide when a claim is judicially reviewable by designing an appeals track that exists outside the 180-day window").

Following the Court's Opinion denying the motion to dismiss, the Court held a status conference on April 10, 2025, at which it set the upcoming, May 5, 2025 Hearing for this action, the first-filed of eleven cases covered by the MOO. *See Leonard v. FEMA*, 24-cv-1311-JB-JFR, Doc. No. 12. At the status conference, FEMA objected to—and continues to object to—the procedure for this judicial review Hearing, including that it lacks procedure for Petitioners' identification of the final decisions they are seeking to challenge, briefing regarding the scope and basis of those challenges and why the Administrative Record lacks substantial evidence for the challenged decisions, and conducting the judicial review through a Hearing that may permit witness testimony. *See* Fed. R. Civ. P., Supp'l R. for Social Sec'y Actions 5 (providing, in similar judicial review action that "[t]he action is presented for decision on the parties' briefs. A brief must support assertions of fact by citations to particular parts of the record."); Motion in Limine, Doc. 56. One week later, on April 17, the Court ordered FEMA to submit the records for review by April 24, and Petitioners to submit records by April 28, in anticipation of the hearing. Doc. 44. On April 24, FEMA submitted records for each Petitioner.[3] Doc. 47. On April 28, Petitioners

---

[3] FEMA submitted 90 records for Petitioner Gallegos, 170 records for Petitioner Priddy, 88 records for Petitioner Cavitt-Olguin, 156 records for Petitioner Kemp, 149 records for Petitioner Leyba, 94 records for Petitioner Marquez, 1,040 records for Petitioner Joslin, 181 records for Petitioner Lungstrum, 137 records for Petitioner Maestas, 692 records for Petitioner Seaverns Family Living Trust, 126 records for Petitioner Ogorek, and 144 records for Petitioner Herrera-Romero. *See* April 24, 2024 lodgment accompanying Doc. 47.

submitted 117 supplemental records for some of the Petitioners.[4] Doc. 49. On April 29, Petitioners filed a "Review Hearing Brief" wherein they identified for the first time the specific categories of damages they seek to submit for the Court's review and identified 15 witnesses for providing oral testimony at the hearing, including three experts. Doc. 52. The same day, Petitioners filed a Request for Judicial Notice with exhibits outside of the Administrative Record. Doc. 53. On May 1, 2022, FEMA filed a Motion *in Limine* to exclude extra-record testimony and evidence, including Petitioners' April 28 Supplemental Record and testimony from the witnesses and experts identified in the Review Hearing Brief. Doc. 56. FEMA also filed a response and objection to Petitioners' Request for Judicial Notice, on May 2, 2025. Doc. 61.

Although it identifies for the first time the full list of damages Petitioners' challenge in this action, Petitioners' Review Hearing Brief still does not specify necessary elements for the Court's judicial review, including the specific "final decisions" Petitioners are submitting for review. The Brief also does not contain explanations as to why some of these challenged claim determinations lack substantial evidence. *See* Doc. 52 at 5–13. In their Brief, Petitioners request, inter alia, that the Court award the full amount of each Petitioners' claimed noneconomic damages in their NOLs for "the annoyance, discomfort, and inconvenience associated" with any of their evacuations, lost real and personal property, and/or cleaning of property. *Id.* In addition to non-economic damages, Petitioners Leyba, Lungstrum, Seaverns Family Living Trust, Kemp, and Ogerek additionally request the Court review FEMA's awards for certain economic damages—Petitioners Leyba and

---

[4] On May 2, 2025, FEMA submitted two additional files for Petitioner Leyba's Administrative Record, which were in Petitioners' April 28, 2025 Supplement, and previously submitted to the Court in July 2024, Doc. 26 and 27, and re-lodged with the Court with new Bates numbers and redactions to assist with their presentation in the upcoming hearing.

Lungstrum seek additional reforestation[5] and erosion damages, Petitioner Seaverns Family Living Trust seeks additional erosion damages, Petitioner Lungstrum also seeks business losses, Petitioner Kemp seeks additional lost wages, and Petitioner Ogorek seeks damages for diminution in value. *Id.* at 1–13.

FEMA now submits this Brief to identify law relevant to the Court's judicial review and the May 5, 2025, Hearing based on its understanding of the Hearing's contemplated procedure and the final decisions Petitioners seek to challenge.

## II.     Standard and Scope of Judicial Review

### a.   The HPCC Act rules and regulations governing judicial review.

Section 104(i) of the HPCC Act defines the scope of judicial review—and the Government's waiver of sovereign immunity—in this action. Under Section 104(i), the Court reviews a final decision by FEMA under the HPCC Act, on the record before FEMA, and shall uphold FEMA's decision if the decision is supported by substantial evidence on the record considered as a whole. The full scope of that judicial review provision is as follows:

HPCC Act § 104(i) Judicial Review.—

(1) In general.—Any claimant aggrieved by a *final decision* of the Administrator under this Act may, not later than 60 days after the date on which *the decision* is issued, bring a civil action in the United States District Court for the District of New Mexico, to modify or set aside *the decision*, in whole or in part.

(2) *Record*.—The court shall hear a civil action under paragraph (1) on *the record* made before the Administrator.

(3) *Standard*.—The decision of the Administrator incorporating the findings of the Administrator *shall be upheld* if the decision is supported by *substantial evidence on the record considered as a whole*. HPCC Act § 104(i)(3).

(emphasis added).

---

[5] These reforestation damages were not specifically identified in the "Complaint." Doc. 1 at 6–8, ¶¶ 14, 17.

The HPCC Act's implementing regulation defines the "Administrative Record" as follows:

*Administrative Record* means all information submitted by the claimant and all information collected by FEMA concerning the claim, which is used to evaluate the claim and to formulate the Authorized Official's Determination. It also means all information that is submitted by the claimant or FEMA in an Administrative Appeal and the decision of the Administrative Appeal. It excludes the opinions, memoranda and work papers of FEMA attorneys and drafts of documents prepared by Claims Office personnel and contractors.

44 C.F.R. § 296.4. The regulation then describes the judicial review process in keeping with Section 104(i):

As an alternative to arbitration, a claimant dissatisfied with the outcome of an Administrative Appeal may seek judicial review of the decision by bringing a civil lawsuit against FEMA in the United States District Court for the District of New Mexico. This lawsuit must be brought within 60 Days of the date that appears on the Administrative Appeal decision. Pursuant to section 104(i) of the Act, the court may only consider evidence in the Administrative Record. The court will uphold FEMA's decision if it is supported by substantial evidence on the record considered as a whole.

44 C.F.R. § 296.43.

> **b. The Court is limited to reviewing FEMA's final decision for substantial evidence, on the record as a whole, under the requirements of the HPCC Act.**

The HPCC Act's judicial review provision contains three important limitations on the scope of the Government's waiver of sovereign immunity and the Court's attendant review. First, the subject of the Court's review is the "final decision of the Administrator" and whether the Court should "modify or set aside the decision." HPCC Act § 104(i)(1). Second, the Court "shall hear [the] action . . . on the record made before the Administrator." HPCC Act § 104(i)(2). Finally, the Court's review of that record shall consist of determining whether the Administrator's decision "is supported by substantial evidence on the record considered as a whole." HPCC Act § 104(i)(3). As a result, any review of non-final decisions, any review outside of the record made before the

Administrator, and any review not for substantial evidence in the record fall outside the scope of that which is permitted by Section 104(i) of the HPCC Act and its waiver of sovereign immunity.

i.  <u>Burden of Proof.</u>

For any HPCC Act claims, "[t]he burden of proving injuries and damages rests with the claimant." 44 CFR § 296.30(a). Accordingly, if claimants do not submit evidence to prove their injuries, then FEMA's decision to deny or lower compensation is supported by substantial evidence. *See also Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992) ("If a plan participant fails to bring evidence to the attention of the administrator, the participant cannot complain of the administrator's failure to consider this evidence."). Additionally, under New Mexico law, "Plaintiffs have the burden of proving damages." *Padilla v. Lawrence*, 1984-NMCA-064, ¶ 19, 685 P.2d 964, 969. Thus, the Court, when reviewing whether FEMA's decisions are supported by substantial evidence, should uphold denials or lowered compensation awards where Petitioners were unable to meet their burden of proof to substantiate their claims.

ii.  <u>The Court's Judicial Review Must Be Limited to the Timely Review of a Final Decision.</u>

The Court's review is limited to FEMA's final decision. HPCC Act § 104(i)(1); MOO, Doc. 40 at 90 ("A final decision is the judicially reviewable decision."). To that end, Petitioners' "Complaint" identifies one specific final decision for each Petitioner for the Court's review—FEMA's "final determination" on their claims issued between December 2023 and February 2024, that is, their individual final Letters of Determination. Doc. 1 at 4–9. However, the Court will need to resolve whether the identified Letters of Determination are the "final decisions" for review, or if the actual final decision is an earlier-in-time determination. *See supra* Part I.

The Court determined that Petitioners have exhausted their administrative remedies at 180-days after the filing of their Notice of Loss, and that "whatever is on the table at day 180 is the

final claim determination." MOO, Doc. 40, at 118; *see also id.* at 107–108, n. 19 ("The Court's holding is that claimants without administrative appeals decisions have exhausted their administrative remedies once the 180-day clock runs . . . ."). The Court reasoned, "Whatever claim determination has been made at day 180 . . . is a judicially reviewable final decision, and the claimant has exhausted administrative remedies, as the limited sovereign immunity waiver of the Hermit's Peak Act requires." *Id.* at 102. If a claimant fails to file an action for judicial review within 60 days of their final decision, the claimant's suit would be untimely. The Court explained: "If any of the Plaintiffs wait longer than sixty days after receiving a final decision -- either in the form of an administrative appeal decision provided within 180 days or in the form of whatever pre-appeal claim determination they had at the 180-day mark -- to seek judicial review, then those Plaintiffs miss the Congressionally mandated deadline, and Congress has not waived FEMA's sovereign immunity." *Id.* at 103; *see also id.* at 107–108 n.19 ("Thus, according to the Court's holding, that claimant has missed their chance to come to federal court to challenge FEMA's compensation determination, because that claimant waited longer than sixty days after getting a final, judicially reviewable claim determination before coming to federal court."). The final decision requirement and its 60-day statute of limitations is a jurisdictional component of the Government's waiver of sovereign immunity. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (quotation marks, brackets, ellipsis, and citation omitted); *Vigil*, 2024 WL 2404487, at *28 (describing this provision as the "final-decision on the HPCCAA's sovereign immunity waiver").

Here, Petitioners each, through Notices of Loss (NOLs), submitted HPCC Act claims between January 5, 2023 to March 29, 2023, *see supra* note 1, to FEMA for compensation of both

economic and non-economic damages from the Hermit's Peak Fire. On February 20, 2024, which was over 240 days after Petitioners' NOLs, but within sixty days of Petitioners' challenged Letters of Determination from FEMA, Petitioners brought suit in District Court under HPCC Act § 104(i)(1) for judicial review of FEMA's "final decision." Doc. 1 at 4–9.

If Petitioners' "final decision" was the decision that existed 180 days after they submitted NOLs, this action is untimely and outside the Government's waiver of sovereign immunity. And if the Court determines that the "final decisions" are instead the LODs challenged in Petitioners' "Complaint," the Court's review must still be limited to those LODs' final decisions that were challenged less than 60 days later. Under Section 104(i)(1) of the HPCC Act, the judicial review action's scope of review is limited to the final decision: a claimant may bring a civil action to modify or set aside the final decision in whole or in part. Petitioners' "Complaint" is also predicated on these challenged LODs. It states that for each Petitioner, FEMA's final decision "provides less than Plaintiff's actual compensatory damages" and "categorically excludes compensation for certain items of damages, such as noneconomic nuisance damages." Doc. 1 at 4–9. Therefore, the Court's judicial review should be limited to the review of challenges of final decisions filed within 60 days of that decision.

         iii.  The Court's Judicial Review Must Be Limited to the Administrative Record That was Before FEMA at the Time of the Challenged Final Decision.[6]

The HPCC Act requires the Court to "hear a civil action under paragraph (1)," which is for judicial review of a final decision, "on the record made before the Administrator." HPCC Act § 104(i)(1) and (2). The Court has noted the same in other HPCC Act litigation: "In reviewing the Administrator's final decision, the district court 'may only consider evidence in the Administrative

---

[6] FEMA has filed a motion *in limine* to exclude extra-record testimony and evidence from the Administrative Record. Doc. 56.

Record' . . . ." *Vigil v. FEMA*, No. 1:23-cv-941-JB-JFR, 2024 WL 2404487, at *27 (quoting 44

CFR § 296.43). The "Administrative Record" is defined as:

> [A]ll information submitted by the claimant and all information collected by FEMA concerning the claim, which is used to evaluate the claim and formulate the Authorized Official's Determination. It also means all information that is submitted by the claimant of FEMA in an Administrative Appeal and the decision of the Administrative Appeal. It excludes the opinions, memoranda and work papers of FEMA attorneys and drafts of documents prepared by Claims Office personnel and contractors.

44 CFR § 296.4.

In addition to this statutory and regulatory text, the substantial-evidence standard of review

necessitates an Administrative Record because "the basic requirement for substantial-evidence

review" is to "produce a record that is to be the basis of an agency action." *Citizens to Preserve

Overton Park, Inc.*, 401 U.S. 402, 415 (1971) (in dicta). When reviewing for substantial evidence

"the court must consider only the record before the [agency] at the time it reached its decision."

*Sandoval*, 967 F.2d at 380. "[Courts should not consider or rely] upon evidence not part of the

administrative record. [Nor should courts] consider arguments that do not appear in the

administrative record." *Voliva v. Seafarers Pension Plan*, 858 F.2d 195, 196 (4th Cir. 1988)

(quoted in *Sandoval*, 967 F.2d at 980). "Under the substantial-evidence standard, a court looks to

*an existing administrative record* and asks whether it contains 'sufficien[t] evidence' to support

the agency's factual determinations." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)

(emphasis added). "The focal point for judicial review should be the administrative record already

in existence, not some new record made initially in the reviewing court." *Bar MK Ranches v.

Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993). "In effect, a curtain falls when the fiduciary completes

its review, and for purposes of determining if substantial evidence supported the decision, the

district court must evaluate the record as it was at the time of the decision." *Sandoval*, 967 F.2d at

381. And where courts have converted an administrative record review into an extra-record

adjudicative proceeding, the Tenth Circuit has found error. *See Franklin Sav. Ass'n v. Dir. Off. Of Thrift Supervision*, 934 F.2d 1127, 1140 (10th Cir. 1991) (finding that "the district court erred in improperly expanding the scope of its review" where the court "heard live testimony from twenty-five witnesses, . . . received over 650 trial exhibits . . . and basically made its own findings" in the administrative record review). The HPCC Act's substantial-evidence standard of judicial review places the Court into the same position as FEMA at the time of FEMA's decision and evaluates whether any reasonable person could have come to that conclusion given the record that was before it at that time, reviewing the evidence in its totality.

As noted above and more fully in FEMA's Motion in Limine, Petitioners seek to introduce documents and testimony outside of this Administrative Record. *See supra* Part I; Doc. 56. This includes both evidence that was not presented to FEMA before the challenged final decisions and evidence that was never presented to FEMA at all. As for evidence that was presented to FEMA, the Court will need to determine which categories of evidence were part of "the record made before the Administrator" in making the challenged final decisions. FEMA has continued to allow claimants to submit additional evidence to substantiate their claims beyond the 180-day cut-off, and then additionally after the "final decisions" in Petitioners' Complaint. Regardless of the Court's determination as to when the challenged "final decision" exists—whether it is any decision that exists 180 days after the submission of a Notice of Loss, as defined in the Opinion denying FEMA's motion to dismiss, Doc. 40 at 102, the LODs challenged in the "Complaint," or any later amended or revised versions of those LODs—the Court's review under Section 104(i) must be limited to the record made before the Administrator for such final decisions. It cannot include evidence that was never provided to the Administrator or provided after the challenged final decisions.

Finally, as an administrative record review, the Court's review should be conducted on the Parties' sequential briefing. As the Federal Rules of Civil Procedure's Supplemental Rule 5 for the similar administrative reviews under 42 U.S.C. § 405(g) provides, "The action is presented for decision by the parties' briefs. A brief must support assertions of fact by citations to particular parts of the record." The open-ended judicial review contemplated at the Hearing, without an order directing procedures before or during the hearing, invites the improper consideration of extra-record evidence, including witness testimony. It also prejudices FEMA by preventing it from knowing, in advance of the hearing, the final decisions Petitioners challenge and the bases of those challenges in the Administrative Record.

      iv.  <u>The Court's Judicial Review Must Be Limited to Review of the Administrative Record for Substantial Evidence.</u>

The Court's judicial review under Section 104(i) of the HPCC Act is limited to a review of FEMA's final decision for substantial evidence in the Administrative Record. It cannot encompass a de novo review of Petitioners' claims. HPCC Act, § 104(i)(3). "The phrase substantial evidence is a term of art used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quotations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Id.* at 102–103 (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. at 229) (alteration in original). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 587 U.S. at 103.

(quotation omitted). In conducting this review for substantial evidence, the Court "may neither reweigh the evidence nor substitute our discretion for that of the [Administrator].'" *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quoting *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995).

The "whole record" review directed by Section 104(i)(3) of the HPCC Act does not expand the scope of the Court's substantial-evidence review. Rather, this principle reflects that "[e]ffective review depends upon the administrative record containing all relevant materials presented to the agency, including not only materials supportive of the government but also materials contrary to the government's decision." *In re United States*, 583 U.S. 1029, 1030–1031 (2017) (Breyer, J., Ginsburg J., Sotomayor, J., and Kagan, J., dissenting) (describing proper scope of administrative record in dissent from stay of orders "to the extent they require discovery and addition to the administrative record") (citing *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mus. Automobile Ins. Co*, 462 U.S. 29, 43–44 (1983)). The fact that there exist materials contrary to the government's decision does not necessarily mean that FEMA's decision is not supported by substantial evidence, as FEMA reviews the record as a whole. *Lax v. Astrue*, 489 F.3d at 1084 ("'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" (quoting *Zoltanski v. F.A.A.*, 372 F.3d at 1200)). In such a case, the Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Lax*, 489 F.3d at 1084 (quoting *Zoltanski*, 372 F.3d at 1200).

Furthermore, the Tenth Circuit has "generally recognized the applicability of this principle [of harmless error] in the administrative review setting." *Allen v. Barnhart*, 257 F.3d 1140, 1145 (10th Cir. 2004) (citations omitted). "For example, this court has held that certain technical errors were minor enough not to undermine confidence in the determination of the case, and that an ALJ's

17

conduct, although improper, did not require reversal because the procedural impropriety involved had not altered the evidence before the ALJ[.]" *Id.* (cleaned up).

     v.   <u>The Court's Judicial Review Must Consider FEMA's Limitations, Obligations, and Discretion under the HPCC Act.</u>

The Court review of FEMA's final decisions should be conducted in light of FEMA's discretion, obligations, and limitations as defined in HPCC Act. The dual purposes of the HPCC Act are "to compensate victims of the Hermit's Peak/Calf Canyon Act, for injuries resulting from the fire" and "to provide for the expeditious consideration and settlement of claims for those injuries." Separately, there is a public interest in FEMA acting as "a proper steward of billions of taxpayer dollars." *News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1196 (11th Cir. 2007). This obligation necessitates FEMA to ensure that a claimant has submitted the evidence necessary to substantiate claims, and to make other considerations before issuing a claim award including "whether sufficient funds are available for payment." HPCC Act, § 104(d)(1)(B)(iv). The HPCC Act also protects the availability of funds to pay claims by requiring that claim awards be reduced to reflect "other payments or settlements of any nature that were paid, or will be paid, with respect to the claim," *id.*, § 104(d)(1)(C)(i), for any insurance payouts, *id.*, and to only allow damages that are "otherwise uncompensated," *id.*, § 104(d)(4).

Accordingly, any modification or setting aside of FEMA's claim determinations in judicial review must apply these same limitations on the award of damages that are contained in the HPCC Act. That includes subtracting for already compensated and to-be-compensated payments for the injuries underlying those claims, adjusting or delaying compensation to reflect projected future claims and the availability of remaining monies in the HPCC Fund, and further limiting compensation to that allowable under the HPCC Act.

c. **Relief available through judicial review under the HPCC Act.**

"In construing waivers of sovereign immunity" the Court must determine "what relief is available against the United States pursuant to the waiver." *Vigil*, 2024 WL 2404487, at *32. Further, in determining the scope of that waiver of sovereign immunity, the waiver must be found to be "unequivocally expressed," *United States v. Nordic Village*, 503 U.S. 30, 33 (1992), and then strictly construed in favor of the government and read no more broadly than its terms require. *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986).

Section 104(i) of the HPCC Act contains a limited waiver of sovereign immunity allowing the Court review a "final decision" by FEMA for substantial evidence on the record made before the Agency and "to modify or set aside the decision, in whole or in part" where it lacks substantial evidence. This judicial review provision is not a forum-selection tool whereby claimants, unhappy with their claim determinations, can select a different decision-maker to adjudicate their claims. Instead, Congress appointed FEMA, a federal agency in the executive branch, as the HPCC Fund Administrator, and gave FEMA discretion in making claims determinations in that role. *See generally,* HPCC Act. Congress did not appoint the judiciary as an alternative administrator, but rather as a final check against FEMA, and with a deferential standard for review where FEMA's decision "shall be upheld if the decision is supported by substantial evidence on the record considered as a whole." HPCC Act, § 104(i)(1). "Within broad limits the law entrusts the agency to make the" determinations in question, and "[i]n such circumstances a 'judicial judgment cannot be made to do service for an administrative judgment.'" *I.N.S. v. Ventura*, 537 U.S. 12, 16 (2002) (quoting *SEC* v. *Chenery Corp.*, 318 U.S. 80, 88 (1943)). FEMA's discretion, and its obligations, are defined in HPCC Act.

Where a court determines that FEMA's final decision was not supported by substantial evidence, the available relief is limited to "modify[ing] or set[ting] aside the decision, in whole or

in part." HPCC Act, § 104(i)(1). The Supreme Court has recently interpreted the statutory term "modify" as a "power [that] has limits." "[S]tatutory permission to 'modify' does not authorize basic and fundamental changes in the scheme designed by Congress. Instead, that term carries a connotation of increment or limitation, and must be read to mean to change moderately or in minor fashion." *Biden v. Nebraska*, 600 U.S. 477, 494–95 (2023) (internal quotation marks and citations omitted). The HPCC Act's language that a court may "set aside" the final decision also does not permit that court to implement an additional remedy beyond directing the Agency to disregard the challenged decision. *See United States v. Texas*, 599 U.S. 670, 696 (2023, Gorsuch, Thomas, & Barrett, JJ, concurring) ("[u]nderstanding 'set aside' … as authorizing a remedy does not" fit within 5 U.S.C. § 706(a)'s scope of review provision). Therefore, if the Court deems that a final decision lacks substantial evidence and does not make a minor modification to that decision but rather sets it aside, the decision should be remanded to FEMA for further determination. *See Hospice of N.M., LLC v. Sebelius*, 435 Fed. Appx. 749, 755 (10th Cir. 2011) ("Additionally, the determination of the amount of refund owed to Lion is a matter properly within the agency's authority. Therefore, the district court's decision to order a full refund rather than remanding for recalculation of the refund amount was an abuse of discretion.").

As the Supreme Court has explained, "A court of appeals 'is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.'" *I.N.S. v. Ventura*, 537 U.S. at 16 (quoting *Florida Power & Light Co.* v. *Lorion*, 470 U.S. 729, 744 (1985)). "Rather, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *I.N.S. v. Ventura*, 537 U.S. at 16 (quoting *Florida Power & Light Co.*, 470 U.S. at 744). This is because where "[w]ithin broad limits the law entrusts the agency to make the" determinations in question, "[i]n such circumstances a 'judicial judgment cannot be made to do service for an administrative judgment.'"

*I.N.S. v. Ventura*, 537 U.S. at 16 (quoting *SEC* v. *Chenery Corp.*, 318 U.S. 80, 88 (1943)). "Nor can an 'appellate court . . .   intrude upon the domain which Congress has exclusively entrusted to an administrative agency.'" *I.N.S. v. Ventura*, 537 U.S. at 16 (quoting *SEC* v. *Chenery Corp.*, 318 U.S. at 88). "Generally speaking, a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *Hospice of N.M., LLC*, 435 Fed. Appx. at 755 (10th Cir. 2011) (quoting *I.N.S. v. Ventura*, 537 U.S. at 16).

### III.     Law Regarding Damages in Petitioners' Claims for Review

#### a.   Damages for Annoyance, Discomfort, and Inconvenience

In *Lands v. FEMA*, 1:23-cv-869-JB-JFR (D.N.M.), and *Dolan v. FEMA*, 1:23-cv-908, 1:23-cv-JB-JFR, this Court held that the HPCC Act allows claimants to recover non-economic damages because damages under the Act are calculated based on New Mexico law and New Mexico law permits Petitioners to recover non-economic damages. *Dolan v. Fed. Emergency Mgmt. Agency*, No. CV 23-00869 JB/JFR, 2024 WL 5145808, at *21 (D.N.M. Dec. 17, 2024).[7] Specifically, the Court concluded that—as a matter of law—non-economic damages for private nuisance are available under the HPCC Act. *Id.* at *22, 25.[8] To determine what specific damages are available to Petitioners for nuisance claims, the Court has instructed the parties to look to New Mexico law.

---

[7] Respondents continue to disagree with the Court's conclusion and reasoning regarding non-economic damages under the HPCC Act; accordingly, Respondents filed a Motion to Alter or Amend Judgment, which is still pending before this Court. *Lands v. FEMA*, 1:23-cv-869-JB-JFR, Doc. 63; *Dolan v. FEMA*, 1:23-cv-908-JB-JFR, Doc. 62.

[8] The Court also concluded that Petitioners could recover non-economic damages resulting from trespass and personal injury claims under the HPCC Act. *Dolan v. Fed. Emergency Mgmt. Agency*, No. CV 23-00869 JB/JFR, 2024 WL 5145808, at *28. These conclusions, however, are not at issue here because both in the Complaint and in their Hearing Brief each Petitioner claims only "noneconomic nuisance damages," Doc. 1 ¶¶ 10-21, consisting of "non-economic damages for annoyance, discomfort, and inconvenience, associated with damage to and/or the loss of use of their property," Doc. 52 at 15.

Under New Mexico law, the purpose of compensatory damages "is to fully compensate a plaintiff[] or restore plaintiff to his rightful position." *McNeill v. Burlington Res. Oil & Gas Co.*, 2007-NMCA-024, ¶ 28, *aff'd*, 2008-NMSC-022, ¶ 28. It is "never the purpose of compensatory damages" to allow "a recovery that is greater than the value of a plaintiff's loss," which would "put the plaintiff in a better position than he or she had been in before the injury." *Id.* According to New Mexico's uniform jury instructions, compensatory damages should be "the amount of money which will reasonably and fairly compensate" the plaintiff. NMRA, Rules 13-1820 (property damage), 13-1802 (personal injury). And in assessing damages—at least in the personal injury context—the fact finder is instructed to consider the "nature, extent and duration of the injury." NMRA, Rule 13-1806.

The New Mexico Supreme Court has suggested plaintiffs can recover private nuisance damages for discomfort, annoyance, and inconvenience. *Aguayo v. Vill. of Chama*, 1969-NMSC-005, ¶¶ 5-7, 449 P.2d 331, 333; *see also Dolan*, No. CV 23-00908 JB/JFR, 2024 WL 5145808, at *24 ("The Court predicts that the Supreme Court of New Mexico would follow the Restatement to allow explicit recovery of noneconomic damages for 'discomfort and annoyance' resulting from nuisance."); *see also* Comment, Restatement (Second) of Torts § 929(1)(c) ("Discomfort and annoyance to an occupant of the land and to the members of the household are distinct grounds of compensation for which in ordinary cases the person in possession is allowed to recover in addition to the harm to his proprietary interests."). To recover for discomfort, annoyance, or inconvenience, however, a plaintiff must be "an occupant" of the property that is impacted by the private nuisance. Restatement (Second) of Torts § 929(1)(c) (explaining nuisance damages include "discomfort and annoyance to him *as an occupant*") (emphasis added); *see also Aguayo v. Vill. of Chama*, 1969-NMSC-005, ¶ 7, 449 P.2d 331, 333 (describing the nuisance damage inquiry as the "question

22

whether *an occupant of real estate* (whether owner or not) may recover damages for discomfort, annoyance, etc., personally resulting to him from a nuisance").

Under New Mexico law, "Plaintiffs have the burden of proving damages." *Padilla v. Lawrence*, 1984-NMCA-064, ¶ 19, 685 P.2d 964, 969. And "[i]t is for the trier of the facts to determine the amount of [nuisance] damages, in view of the discomfort or annoyance to which the plaintiffs have been subjected." *Padilla*, 1984-NMCA-064, ¶ 16 (citation omitted). "While mathematical certainty as to the amount of damages need not be demonstrated, a plaintiff in a nuisance action is nevertheless required to meet a measure of proof sufficient to enable the trier of fact to fix the amount." *Id.* ¶ 19. "Where insufficient evidence is introduced, the trial court is justified in refusing to award damages." *Id.*

A plaintiff in a private nuisance action may also seek compensatory damages for "diminution in property value." *Id.* ¶ 16. Damages for "diminution in the fair market value of the property" may be awarded for permanent property damage. *McNeill v. Burlington Res. Oil & Gas Co.*, 2007-NMCA-024, ¶ 25, *aff'd*, 2008-NMSC-022, ¶ 25, 182 P.3d 121. "If the damage to real property is temporary," however, "the measure of damages is the cost of repair or remediation, so long as this cost is less than the diminution in fair market value." *Id.* "Temporary damages are generally defined as damages that can be remedied, removed, or abated within a reasonable period and at a reasonable expense." *Id.* ¶ 27.

Under both the HPCC Act and New Mexico law, damages awards must be made on an individualized, case-by-case basis. *See* HPCC Act, § 104(c)(3) ("Any payment under this Act— shall be limited to actual compensatory damages measured by injuries suffered . . . ."); *see Padilla v. Lawrence*, 1984-NMCA-064, ¶ 19, 685 P.2d 964, 969 ("While mathematical certainty as to the amount of damages need not be demonstrated, a plaintiff in a nuisance action is nevertheless required to meet a measure of proof sufficient to enable the trier of fact to fix the amount.").

Accordingly, neither Congress nor New Mexico law contemplates the use of a formula or ratio of damages to determine how much of a nuisance damage award will reasonably and fairly compensate a claimant for their discomfort, inconvenience, and annoyance.

### b. Role of Expert Testimony in Administrative Claims Process

In their Review Hearing Brief, Petitioners contend that "FEMA's awards of erosion control and reforestation were not supported by substantial evidence because FEMA's experts were not qualified or reliable." Doc. 52 at 18.[9] In support of this contention, Petitioners point to the requirements for expert witnesses in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). *Id.*

Rule of Evidence 702 does not apply to administrative proceedings. The purpose of Rule 702 is to allow the Court to better understand evidence and more accurately determine relevant facts in a case where it is serving an adjudicatory role. *See Daubert*, 509 U.S. at 591 ("Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance."). Here, by contrast, the Court in reviewing FEMA's claim determinations, acts not as a trial court but rather as an appellate body. *See* HPCC Act, § 104(i). Rather, "[r]eviews of agency action in the district courts must be processed as appeals. In such circumstances the district court should govern itself by referring to the Federal Rules of Appellate Procedure." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994).

---

[9] This is the first argument in this litigation that Petitioners have made challenging the qualification of FEMA's officials who assessed their claims for damages. It is also the only basis that Petitioners have offered, at this point, for challenging their economic damages awards. FEMA objects to the procedure by which Petitioners have not been required to identify the bases for their substantial evidence challenges before the hearing.

Nor do the Federal Rules of Evidence apply in agency proceedings. *Johnson v. Boston Pub. Schs.*, 906 F.3d 182, 192 (1st Cir. 2018) ("Absent an express requirement … administrative hearings are not bound by the Federal Rules of Evidence."); *Fed. Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 705–06 (1948) ("[A]dministrative agencies . . . have never been restricted by the rigid rules of evidence."); *R&B Transp., LLC v. U.S. Dep't of Lab., Admin. Rev. Bd.*, 618 F.3d 37, 45 (1st Cir. 2010) ("The Federal Rules of Evidence do not apply in APA proceedings."). "[A]gencies are not bound by the strict rules of evidence governing jury trials." *Sorenson v. Nat'l Transp. Safety Bd.*, 684 F.2d 683, 686 (10th Cir. 1982). This is for good reason. As Wright & Miller's *Federal Practice and Procedure* explains, "The Federal Rules of Evidence, in all their complexity, represent an effort to protect presumptively unsophisticated members of a jury from hearing evidence that they are ill-equipped to assess. This protective rationale does not apply to the professional agency personnel who generally conduct formal administrative proceedings." 32 Fed. Prac. & Proc. Jud'l Rev. § 8142 (2d ed. 2025). Although Petitioners cite to a law review article arguing that Rule 702 and *Daubert* should apply to agency proceedings, Doc. 52 at 18–19, courts have held otherwise. *See Palm Valley Health Care, Inc. v. Azar*, 947 F.3d 321, 329–30 (5th Cir. 2020) ("*Daubert*, however, does not apply in agency proceedings. It interprets Federal Rule of Evidence 702, and the federal rules of evidence do not govern agencies." (five citations omitted)); *Ford v. Saul*, 950 F.3d 1141, 1158 (9th Cir. 2020) ("We have likewise held that 'the requirements for admissibility of expert testimony under Federal Rule of Evidence 702 do not apply to the admission of evidence in Social Security administrative proceedings.'" (ellipsis and citation omitted)).

Further, agencies may rely upon their own experts and specialized employees in an adjudicative review. *See Lee v. U.S. Air Force*, 354 F.3d 1229, 1242 (10th Cir. 2004) ("It is well

established that 'agencies are entitled to rely on their own experts so long as their decisions are not arbitrary and capricious.'" (quoting *Colo. Envt'l Coal. v. Dombeck*, 185 F.3d 1162, 1173 n.12 (10th Cir.1999))). When an agency does so, it "is not [a court's] duty . . . to substitute our judgment for that of the agency's on matters within its expertise. Moreover, we typically defer to the 'reasonable opinions' of agency experts in matters implicating conflicting expert opinions." *Colo. Wild v. U.S. Forest Serv.*, 435 F.3d 1204, 1213–14 (10th Cir. 2006) (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)). This is true "even if, as an original matter, a court may find contrary views more persuasive." *Ecology Ctr., Inc. v. U.S. Forest Serv.*, 451 F.3d 1183, 1188–89 (10th Cir. 2006); *see also Taunya B. v. Dudek*, No. CV-24-252 GBW, 2025 WL 670098, at *4 (D.N.M. Mar. 3, 2025) (Wormuth, M.J.) (explaining in that in review of Social Security ALJ's rejection of claimant's medical opinion that "[C]ourts have deferred to ALJs' 'minimalist' findings" but that explanation must at least "eschew rote analysis and conclusory explanations and discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence") (cleaned up)).

Finally, an agency does not need to disclose its experts' underlying data for the agency's determination to be supported by substantial evidence. In *Biestek v. Berryhill*, the Supreme Court considered a substantial-evidence challenge to the Social Security Administration's "final decision" where the agency's vocation expert did not disclose the source of their data. The Court explained, "Even though the applicant might wish for the data, the expert's testimony still will clear (even handily so) the more-than-a-mere-scintilla threshold. . . . It takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record. And in so doing, it defers to the presiding ALJ, who has seen the hearing up close." 587 U.S. at 108.

*Respectfully Submitted*,

RYAN ELLISON
United States Attorney

*/s/ Nicholas M. Sydow*
Nicholas M. Sydow
Carrie Y. Yang
Jena Ritchey
Rafael Go
Assistant United States Attorneys
201 Third St. NW, Suite 900
Albuquerque, NM 87103
(505) 224-1409
nicholas.sydow@usdoj.gov
jena.ritchey@usdoj.gov
carrie.yang@usdoj.gov
rafael.go@usdoj.gov

***Attorneys for Respondent Federal Emergency Management Agency***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 3, 2025, I filed the foregoing document electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Nicholas M. Sydow*
Nicholas M. Sydow
Assistant United States Attorney

27